UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 26 Cr. |
| KEVIN TAYLOR, and GENO ROEFARO, | 26 CRIM 053 |
| Defendants. | |

### Overview

1.    From at least in or about July 2023, through in or about February 2024, KEVIN TAYLOR, the defendant, repeatedly abused his authority and considerable influence as the Commanding Officer of the School Safety Division ("SSD") of the New York City Police Department ("NYPD") by soliciting or demanding bribes in two bribery schemes.

2.    In the first scheme, KEVIN TAYLOR, the defendant, solicited and accepted from GENO ROEFARO, the defendant, among other things, tens of thousands of dollars' worth of benefits, including, but not limited to: cash payments made on multiple occasions; airfare and luxury hotel lodging, which TAYLOR used to vacation in Las Vegas, Nevada, and the Bahamas; the purchase of entertainment experiences, including a helicopter tour for TAYLOR in Las Vegas and tickets to Broadway shows; and meals at high-end restaurants in Manhattan, Florida, Las Vegas, and the Bahamas. In exchange for these benefits, and as described further below, TAYLOR repeatedly abused his position as the Commanding Officer of the SSD to take actions aimed at obtaining a valuable contract for ROEFARO's company ("Company-1"), including but not limited to issuing a memorandum recommending the NYPD award Company-1 a contract worth more than $11 million and advocating before the New York City Council (the "City Council") that the City of New York (the "City") procure Company-1's goods and services.

3. In the second scheme, KEVIN TAYLOR, the defendant, solicited as much as approximately $75,000 from two employees ("Individual-1" and "Individual-2," respectively) of a second company ("Company-2") that had contracted with the NYPD to provide goods and services to the SSD. In exchange for these solicited payments, TAYLOR promised to use his power and influence to facilitate, and otherwise not to disrupt, Company-2's contracting with the NYPD. Individual-1 and Individual-2 never made the bribe payments solicited by TAYLOR.

## Relevant Individuals and Entities

### *Kevin Taylor and the SSD*

4. The NYPD is the largest municipal police department in the United States, with an annual budget in excess of $5 billion and more than 48,000 full-time employees. The NYPD receives more than $10,000 per calendar year of federal program funds involving grants and other forms of federal assistance.

5. At all relevant times, the SSD was a division within the NYPD that works with the City's Department of Education ("DOE") to provide safety and security services for students, teachers, and staff at approximately 1,800 schools across the City. The SSD was staffed by approximately 4,000 NYPD uniformed and civilian employees who worked with school administrators to help maintain order and safety within schools. The SSD had an annual budget of more than $250 million.

6. From in or about 1996 through in or about 2025, KEVIN TAYLOR, the defendant, was a member of the NYPD. In or about June 2021, and after having attained the rank of Deputy Inspector, TAYLOR was assigned to the SSD as its Operations Commander, the second highest-ranking uniformed position in the SSD. TAYLOR was subsequently promoted to the rank of

2

Inspector and, in or about June 2023, TAYLOR was promoted to serve as the SSD's Commanding Officer, which is the highest-ranking position in the SSD.

7. As an employee of the NYPD, KEVIN TAYLOR, the defendant, was subject to the NYPD Patrol Guide, which imposes on "[a]ll members of the service an absolute duty to report any corruption or other misconduct, or allegation of corruption or other misconduct, of which they become aware." A separate manual to which TAYLOR was subject, the Administrative Guide, further prohibited TAYLOR from receiving any cash payments or personal gifts from private citizens in connection with his role at the NYPD, stating in relevant part: "[i]t is the policy of the Department that members of the service may not accept any reward, gratuity, gift or other compensation for any service performed as a result of or in conjunction with their duties as public servants." Similarly, the New York City Charter prohibited, at all relevant times, any "public servant," such as TAYLOR, from "accept[ing] any valuable gift . . . from any person or firm which such public servant knows is or intends to become engaged in business dealings with the city."

### Geno Roefaro and Company-1

8. GENO ROEFARO, the defendant, is the founder, majority owner, and chief executive officer of Company-1, which at all relevant times marketed and sold cellphone-based tipline and panic button applications to school districts and police departments, among other customers.

9. No later than in or about June 2022, GENO ROEFARO, the defendant, began attempting to sell Company-1's goods and services for use in DOE's schools. During the first half of 2023, the SSD awarded Company-1 the opportunity to pilot Company-1's panic button

application at four high schools in New York City. That pilot was funded through a purchase order issued by the NYPD for $19,860.

### Company-2, Individual-1, and Individual-2

10.     At all relevant times, Company-2 designed, manufactured, and sold body armor to police departments and other customers throughout the United States.

11.     At all relevant times, Individual-1 and Individual-2 were employed by Company-2.

12.     In or about January 2023, the NYPD approved funding for the SSD to buy bullet-resistant vests for approximately 4,000 school safety agents. In or about May 2023, Company-2 submitted a proposal to the NYPD to supply those vests.

### Taylor's Bribery Scheme with Roefaro

#### Roefaro Makes Initial Cash Payments to Taylor in Exchange for a Promise of NYPD Procurement

13.     In or about August 2023, GENO ROEFARO, the defendant, made at least two substantial cash payments to KEVIN TAYLOR, the defendant, in Yonkers, New York. First, on or about August 22, 2023, ROEFARO withdrew approximately $20,000 in cash from a bank branch in the Bronx, New York, followed by ROEFARO traveling to, and giving TAYLOR cash in, Yonkers. Second, on or about August 31, 2023, ROEFARO withdrew approximately $15,000 in cash from a bank branch in Manhattan, followed by ROEFARO traveling to, and giving TAYLOR cash in, Yonkers.

14.     In between these cash payments and shortly after them, KEVIN TAYLOR, the defendant, used his official authority and influence as Commanding Officer of the SSD to recommend the NYPD purchase millions of dollars' worth of goods and services from Company-1. For instance, in between the two cash payments described above, on or about August 25, 2023, TAYLOR issued an official NYPD memorandum to the NYPD's Deputy Commissioner of the

Bureau of Community Affairs—*i.e.*, the Bureau that oversees the SSD—formally requesting NYPD funding of approximately $11 million for the purchase and implementation of Company-1's "mobile panic alert system."

15.     In addition, less than two weeks after the second of the above-described cash payments, on or about September 12, 2023, a high-ranking NYPD official ("NYPD Official-1") under the supervision of KEVIN TAYLOR, the defendant, authorized without any competitive bidding a purchase order of $19,830 for Company-1 to pilot a tipline within the SSD's command center.

### *Roefaro Pays for Taylor's Vacations in Exchange for Taylor's Continued Advocacy for the City to Procure Goods and Services from Company-1*

16.     From on or about September 30, 2023, through on or about October 9, 2023, KEVIN TAYLOR, the defendant, went on a vacation largely paid for by GENO ROEFARO, the defendant, to Las Vegas. Among other things, ROEFARO purchased airfare for TAYLOR and a female individual with whom TAYLOR was in a romantic relationship, lodging for TAYLOR and his companion at a luxury hotel in Las Vegas, and tickets to entertainment events, including for a helicopter tour of Las Vegas and a medieval-themed dinner theater. In total, ROEFARO spent more than $10,000 on this trip by TAYLOR and TAYLOR's companion to Las Vegas.

17.     Shortly after this vacation, on or about October 25, 2023, KEVIN TAYLOR, the defendant, testified before the City Council at a hearing jointly convened by the City Council Committee on Education and the City Council Committee on Public Safety. In prepared remarks submitted to the Committees, TAYLOR described how the SSD was piloting a "reporting platform" application developed by Company-1—*i.e.*, the tipline pilot that was the subject of the September 12, 2023 purchase order described above. During the hearing, and in response to questions by members of the City Council, TAYLOR expressly advocated for the expansion of

the pilot, stating he "would like if we could move [Company-1's products] out to anyone and everyone," and that he "look[s] forward to having [Company-1's products] out to [sic] citywide so everyone can benefit from having [a] safe school."

18.    Approximately one week after this testimony by KEVIN TAYLOR, the defendant, on or about November 2, 2023, TAYLOR traveled to the Bahamas with a female individual with whom TAYLOR was in a romantic relationship. GENO ROEFARO, the defendant, who did not travel to the Bahamas, paid for the airfare of TAYLOR and his companion, as well as at least two of their meals, including one at a high-end steakhouse. After this travel to the Bahamas, in or about late November 2023, over the course of three days, ROEFARO made two cash withdrawals, totaling approximately $35,000, from a bank in Manhattan, and met with TAYLOR in person to make cash payments to TAYLOR.

### *Roefaro Grows Increasingly Frustrated with Taylor*

19.    In or about December 2023, and without KEVIN TAYLOR, the defendant, having secured anything more than a second pilot for Company-1, GENO ROEFARO, the defendant, repeatedly complained to TAYLOR about TAYLOR's failure to deliver on his end of their corrupt bargain. ROEFARO issued his complaints in writing via an encrypted messaging application called Signal, with his messages set to autodelete after a brief period of time, typically eight hours.[1]

20.    For example, on or about December 17, 2023, GENO ROEFARO, the defendant, messaged KEVIN TAYLOR, the defendant, via Signal: "I've got nothing from you brother and I'm already in for hundreds [of thousands of dollars]." TAYLOR responded, in relevant part: "You

---

[1] Despite these autodeletion settings, TAYLOR and ROEFARO at times took and saved screenshots of their Signal messages to their cellphones; certain of these screenshots have been recovered by law enforcement pursuant to judicially authorized search warrants.

got nothing from me??" TAYLOR also admonished ROEFARO: "You can't play with the big boys and piss like a puppy."

21.    Two days later, on or about December 19, 2023, KEVIN TAYLOR, the defendant, again exercised his authority as the Commanding Officer of the SSD to influence the NYPD to procure goods and services from Company-1. That day, TAYLOR issued a memorandum to the NYPD Police Commissioner with the subject, "Request to Establish Tip Line." The memorandum recounted how the SSD had begun piloting a "24/7 anonymous tip line" in September 2023 and concluded by stating "[t]he undersigned [TAYLOR] is requesting to fully establish and commence the tip line." The same day, GENO ROEFARO, the defendant, saved to his phone a picture of a printout of the memorandum sent to him via Signal.

22.    The December 19, 2023, memorandum by KEVIN TAYLOR, the defendant, did not placate GENO ROEFARO, the defendant. For example, on or about December 22, 2023, ROEFARO texted TAYLOR via Signal: "I need something significant to be in place prior to end of year"; and "We've been waiting since August to have some type of result." TAYLOR acknowledged ROEFARO's expectation that TAYLOR would have caused the NYPD to have taken more favorable actions by then, responding: "I know." ROEFARO responded:

> It's been fun, but it's not fun or funny anymore. Our company (ME) needs to report something real and significant that is in place prior to end of year. And we need full announcement and launch first 2 weeks of the year.
>
> If not, I'm fucked. And you don't want me to be fucked. I'm both your whore and your sugar daddy all in one.
>
> I need you to take this seriously. We need location and people at bare minimum. Can you do that part at least please this year? That is within your control (and costs you zero).

*Roefaro Continues to Bribe Taylor*
*in Exchange for the Promise of a January 2024 Press Conference*

23.    In or about late December 2023, KEVIN TAYLOR, the defendant, and those working for him or at his direction, used their influence to attempt to convene a press conference at which the NYPD and DOE would announce the SSD's procurement of a tip line from Company-1. No later than on or about December 28, 2023, NYPD and DOE personnel settled on January 8, 2024, at 1:00 p.m. for the day and time of the press conference.

24.    No later than on or about January 4, 2024, however, the press conference scheduled for January 8, 2024, was canceled. GENO ROEFARO, the defendant, nonetheless continued to hold out hope that KEVIN TAYLOR, the defendant, and the City more generally would convene a press conference. On or about January 14, 2024, ROEFARO texted a third party that ROEFARO was traveling to New York City that week "in the hopes that something may happen" and that ROEFARO had been "told that a press release is supposed to be finalised [sic] on Tuesday."

25.    While pushing for a press conference to announce the procurement of his company's goods and services, GENO ROEFARO, the defendant, continued to provide additional things of value for KEVIN TAYLOR, the defendant. In or about January 2024, ROEFARO spent thousands of dollars on tickets to multiple Broadway musicals for use by TAYLOR. In addition, from on or about January 14, 2024, through on or about January 17, 2024, while TAYLOR was on vacation in the Bahamas with a female individual with whom TAYLOR was in a romantic relationship ("Individual-3"), ROEFARO paid for spa services and dining at upscale restaurants for TAYLOR and Individual-3. The day after TAYLOR returned to New York from this trip, on or about January 18, 2024, TAYLOR contacted a colleague who worked in the NYPD's public information office and asked, with respect to Company-1: "Is the press release done?"

26.     By the end of January 2024, the NYPD still had not procured for the SSD any goods and services from Company-1, beyond the pilots discussed above, and had not publicly announced a relationship with Company-1. GENO ROEFARO, the defendant, once again expressed frustration that his corrupt relationship with KEVIN TAYLOR, the defendant, had not yielded the results ROEFARO sought. For example, on or about January 31, 2024, ROEFARO repeatedly emphasized that, in his view, TAYLOR had failed to deliver his end of the bargain. ROEFARO texted TAYLOR via Signal: ". . . I have made a MAJOR investment and zero return"; "[t]his is complete bullshit that we never launched this"; and "we were supposed to launch this in September."

27.     On or about February 2, 2024, KEVIN TAYLOR, the defendant, was removed from his position as the Commanding Officer of the SSD and transferred to a different command. Six days later, GENO ROEFARO, the defendant, messaged TAYLOR via Signal: "[w]e have to start a new venture together. Something that doesn't require any *finesse or politics*. Just all muscle. lol…" (Emphasis added). TAYLOR responded with an emoji depicting a face crying with laughter (*e.g.*, 😂).

### Taylor Becomes Concerned his Scheme with Roefaro will be Exposed

28.     On or about September 9, 2024, KEVIN TAYLOR, the defendant, texted Individual-3 a hyperlink to a news article published that day. The article reported that Company-1 was implicated in a federal public corruption investigation and stated, in part, that "In October 2023, the head of the NYPD's school safety unit, Kevin Taylor, told a City Council hearing that

the unit was testing out [Company-1's] app in a pilot program at five schools, and that the department's intention was to expand the program citywide."

29.    Immediately after sending this hyperlink, KEVIN TAYLOR, the defendant, texted Individual-3 expressing concern that GENO ROEFARO, the defendant, could incriminate TAYLOR if approached by law enforcement, and Individual-3 agreed.

### Taylor's Scheme to Solicit Bribes from Individual-1 and Individual-2

#### *Taylor Solicits Payments Upon Issuance of an Award to Company-2*

30.    Nearly in parallel to the events described above, KEVIN TAYLOR, the defendant, abused his authority and influence within the SSD to corruptly solicit payments from Individual-1 and Individual-2 in exchange for TAYLOR's promise to take actions to facilitate, and not otherwise disrupt, contracting between the NYPD and Company-2.

31.    On or about June 7, 2023, the NYPD transmitted a non-binding "Award" to Company-2, which Company-2 countersigned and executed on or about June 9, 2023. Pursuant to the Award, the NYPD agreed to purchase $2,793,140 of ballistic vests from Company-2 for use by members of the SSD, subject to execution of a contract between Company-2, as well as the NYPD undergoing a final review, approval, and/or registration by the NYPD's Chief Contracting Officer, the City's Office of Management and Budget, and the City's Comptroller.

32.    Notwithstanding the fact that Company-2's contract with the NYPD had not yet been finalized, Company-2 began taking steps to ensure it could timely deliver vests to the City under the contract. Those steps included, among others, purchasing materials for the fabrication of the vests and engaging in a series of sizings of SSD employees. This activity by Company-2 was "at risk," meaning that Company-2 was spending money to fulfill the contract, even though there

was a risk that the contract would never be finalized and that Company-2 would never be paid by the City.

33.    KEVIN TAYLOR, the defendant, began soliciting bribes from Individual-1 and Individual-2 just weeks after the SSD issued its Award to Company-2. As part of Company-2's "at risk" work to ensure it would be able to deliver on the contract promptly, Individual-1 arranged to meet with SSD leadership to discuss a plan for Company-2 to measure the several thousand SSD employees who would receive vests. At TAYLOR's request, the meeting occurred at a restaurant in Manhattan, away from the SSD office.

34.    Prior to the meeting, on or about June 28, 2023, KEVIN TAYLOR, the defendant, notified Individual-1 that TAYLOR had just been appointed the Commanding Officer of the SSD and communicated, in substance, that TAYLOR was now in charge of the SSD. Both before and after this discussion, TAYLOR also communicated to Individual-1 and Individual-2 that TAYLOR's influence within City government was substantial. For example, on multiple occasions TAYLOR boasted to Individual-1 and Individual-2 that TAYLOR had a personal relationship with the then-Mayor of New York City and the City's then-Deputy Mayor for Public Safety.

35.    On or about July 6, 2023, KEVIN TAYLOR, the defendant, met with Individual-1 and Individual-2 at the restaurant in Manhattan. During the meeting, TAYLOR communicated to Individual-1 and Individual-2 that TAYLOR was hosting a holiday party for the SSD later that year. On or about July 21, 2023, TAYLOR sent Individual-1 a brochure from a privately run event space (the "Event Space") in the Chelsea neighborhood of Manhattan. The brochure stated that the estimated total cost for the holiday party was $152,000. The following Monday, on or about July 24, 2023, Individual-1 asked TAYLOR: "What's the sponsorship on this?" TAYLOR responded: "We need help getting it off the ground," and "you got to bring it home for us papa."

11

36.     On or about August 3, 2023, Individual-1 sent a text message to KEVIN TAYLOR, the defendant, asking if they could "meet up early next week" to discuss "that event and me." Individual-1 wrote further: "You got me nervous. We are all good with the vests right?" Although TAYLOR responded that TAYLOR would meet with Individual-1, TAYLOR did not address Individual-1's concern about whether "[w]e are all good."

37.     Five days later, on or about August 8, 2023, KEVIN TAYLOR, the defendant, and the Event Space executed a written contract. The SSD holiday party was not formally hosted by the NYPD itself but rather TAYLOR himself. Accordingly, TAYLOR—and not the NYPD as an entity—was personally liable for payment under the contract with the Event Space. In the contract, TAYLOR agreed to make an initial deposit to the Event Space of $62,400, which would reserve the Event Space for the SSD holiday party to be held on December 1, 2023. The contract specified that the final payment was estimated to be $124,800, with the balance of the estimated final payment to be made prior to December 1, 2023.

38.     Shortly after KEVIN TAYLOR, the defendant, signed the contract with the Event Space, TAYLOR again asked Individual-1 for money. On or about August 12, 2023, TAYLOR texted Individual-1: "The event??"; "I got 50k"; "Only 75 left." To placate TAYLOR, and because of a fear that TAYLOR would sabotage the contracting process for Company-2 if Individual-1 upset TAYLOR, Individual-1 responded "I will do my best" and that Individual-1 would meet with Company-2's board of directors to request the contribution. Two days later, on or about August 14, 2023, Individual-1 asked TAYLOR to identify "the org" where any contribution would be directed. At no time, however, did TAYLOR identify any charitable organization linked to the SSD holiday party.

39.    In or about September 2023, the Award continued to undergo review for final approval by the City, and Company-2 continued to work "at risk." Individual-1 remained concerned that KEVIN TAYLOR, the defendant, might interfere with the contracting process—whether through his exercise of influence with other City officials or by disrupting Company-2's ability to perform under the contract—if Company-2 did not make a payment to TAYLOR. On or about September 6, 2023, Individual-1 sent a text message to TAYLOR, stating, in relevant part, "Hey, long time no speak. Hope all is well. Have you heard anything about this order? I keep bugging [another SSD employee] weekly." TAYLOR responded that he would "circle back to you today," but never did so.

40.    On or about October 5, 2023, the City Comptroller formally registered the SSD's contract with Company-2, and Individual-1 reached out to notify KEVIN TAYLOR, the defendant, of the development. At the time, Individual-1 remained concerned that TAYLOR might interfere with the contracting process, the sizing process, or more generally Company-2's ability to deliver the ballistic vests on time. The next day, Individual-1 texted TAYLOR: "You went Mia [missing in action] on me. I got nervous lmao," and "I thought I was annoying you when I did not hear from you." TAYLOR responded: "Never !!" and "If we are friends we will always be friends!! And brothers!!" Individual-1 expressed relief, texting TAYLOR: "I hear ya. We good." TAYLOR responded by asking, "Where are your hook ups."

***Taylor Interferes with Company-2's Performance under the Contract***

41.    By mid-October 2023, and with the December 1, 2023 holiday party approaching, KEVIN TAYLOR, the defendant, had only paid approximately $50,000, and still owed nearly $75,000, to the Event Space. During the next several weeks, TAYLOR attempted, both in person and by text message, to solicit bribes from Individual-1 and Individual-2 in exchange for TAYLOR

13

facilitating Company-2's sizing and fitting schedule, as well as Company-2's general ability to perform its obligations under the contract.

42.    For example, on or about October 19, 2023, KEVIN TAYLOR, the defendant, sent Individual-1 text messages providing details for the party, including that it was to be "Hosted by Inspector Kevin Taylor" and "guaranteed to be a sold out event," followed by a plea to Individual-1: "I need your help." Individual-1 did not respond for several days. When Individual-1 eventually did so, Individual-1 apologized for his delayed response, and explained that Individual-1 had been traveling and would call TAYLOR later that day. TAYLOR responded: "Ok" and "Don't forget."

43.    KEVIN TAYLOR, the defendant, next requested payment from Individual-1 on or about October 30, 2023, by sending Individual-1 a text message consisting entirely of three question marks ("???"). Individual-1 responded, in an effort to hold TAYLOR at bay, that Individual-1 was at a meeting. Individual-1 falsely told TAYLOR that the "topic [of the contribution] is coming up. Don't worry." TAYLOR responded, "I'm very worried," and indicated he was "short" $75,000.

44.    Over the next several weeks, and without Company-2, Individual-1, or Individual-2 having made any contribution to the holiday party, Individual-1 struggled to schedule additional sizings for SSD employees while KEVIN TAYLOR, the defendant, frequently badgered Individual-1 for a contribution. For example, on or about Friday, November 3, 2023, Individual-1 emailed TAYLOR's assistant (the "SSD Assistant") to confirm that a make-up day for fittings would go forward the following week. The next day, on or about November 4, 2023, and without the make-up day having been confirmed, TAYLOR sent Individual-1 a text message consisting solely of three eyeball emojis (*e.g.*, 👀 👀 👀 ), conveying that TAYLOR was keeping an eye on

Individual-1 and awaiting a payment. Without any payment having been made, on the following Monday, on or about November 6, 2023, the SSD Assistant emailed Individual-1 and Individual-2, notifying them that the make-up day was canceled and that the SSD Assistant "will let [Individual-1 and Individual-2] know when we can move forward."

45.    Within ten minutes of receiving notice of this cancellation from the SSD Assistant, Individual-1 sent a text message to KEVIN TAYLOR, the defendant, offering an excuse for why Individual-1 had not been in contact with TAYLOR, specifically, that Individual-1 had "[b]een traveling like crazy." Individual-1 alerted TAYLOR that Individual-1 had been notified that the "make up day" had been canceled and indicated Individual-1 would call TAYLOR later that day. TAYLOR did not respond to this message, and the next day the SSD Assistant sent a text message to Individual-1 attaching a formal invitation for the holiday party, thereby linking the cancellation of the make-up day to the party. The following day, TAYLOR sent Individual-1 the same invitation, as well as a promotional video for the party. Without any intervening messages with Individual-1, on or about November 14, 2023, TAYLOR sent successive text messages to Individual-1 soliciting a contribution: "???" and "Omg nothing??"

46.    On or about November 16, 2023, the SSD holiday party was approximately two weeks away, and KEVIN TAYLOR, the defendant, still owed the Event Space nearly $75,000. The next day, on or about November 17, 2023, Individual-1 and TAYLOR exchanged text messages about TAYLOR's request for a contribution. Individual-1 texted: "Haven't forgot. I have been out but we need to talk Monday." TAYLOR responded: "My friend I'm disappointed[.] It's ok." One week later, and with Individual-1, Individual-2, and Company-2 still having not made a payment, TAYLOR sent Individual-1 a veiled threat via text message: "My guys told me not to give up on you that you will come through 😔 😔 😔 ."

47.     On or about November 21, 2023, KEVIN TAYLOR, the defendant, secured from a teacher's union a check, issued directly to the Event Space, for $20,000 as a contribution toward the holiday party. TAYLOR made no other payments to the Event Space prior to the December 1, 2023 party, meaning that TAYLOR continued to owe nearly $55,000 for the party.

### *After the SSD Holiday Party, Taylor Continues to Solicit Payment from Individual-1 and Individual-2 and Schedules a Sizing*

48.     On or about Friday, December 1, 2023, KEVIN TAYLOR, the defendant, hosted the SSD holiday party at the Event Space. The following Monday, on or about December 4, 2023, Individual-1 offered an apology to TAYLOR for Company-2 not "com[ing] through for you." Individual-1 explained that Company-2 had "said they were going to [support the party] and then said they wanted a 501c3 [a charitable organization] for the event." Individual-1 texted TAYLOR: "I would like to come see you if I can." TAYLOR responded with another solicitation: "In [sic] still stuck"; and "We still owe 50k." To appease TAYLOR, Individual-1 (falsely) promised to "speak to the boss," which prompted TAYLOR to write: "Please I need your help so we don't look crazy and put a blackeye on us."

49.     By mid-December 2023, KEVIN TAYLOR, the defendant, still had not paid the balance owed to the Event Space, which by that time had made several requests for final payment. For example, on or about December 14, 2023, a manager (the "Event Space Manager") at the Event Space emailed the SSD Assistant explaining that "payment is very past due, and we will need it ASAP." The next day, on or about December 15, 2023, the Event Space Manager sent another email to the SSD Assistant, reminding the SSD Assistant that "this payment . . . is very past due." Later that day, the SSD Assistant updated TAYLOR regarding the Event Space's requests, notifying him via text message that the Event Space was "not tryna hear anything [o]utside of full payment being made."

16

50.     KEVIN TAYLOR, the defendant, reacted to these continued requests for payment from the Event Space by renewing his efforts to secure payment from Individual-1, Individual-2, and Company-2 by facilitating additional sizings for SSD personnel whose vests had not yet been manufactured or delivered by Company-2. On or about Saturday, December 16, 2023, TAYLOR texted NYPD Official-1 and directed NYPD Official-1 to "get that [the sizings] going ASAP."

51.     The following Monday, on or about December 18, 2023, NYPD Official-1 adhered to the weekend request by KEVIN TAYLOR, the defendant, to schedule the sizings "ASAP." At approximately 4:54 p.m., NYPD Official-1 emailed Individual-1 requesting, in substance, that Company-1 conduct sizings for 98 additional SSD members. Nineteen seconds later, NYPD Official-1 texted Individual-1 on behalf of TAYLOR: "Taylor said he was awaiting your phone call. He said you knew what it's regarding." Individual-1 understood this text message to be another solicitation for a payment from Company-1.

52.     By in or about early January 2024, KEVIN TAYLOR, the defendant, remained considerably short of the money—at that point nearly $50,000—that he owed the Event Space. Around this time, the sizings for members of the SSD had resumed, and Individual-2 was often present at the SSD's offices in Manhattan to facilitate them. TAYLOR continued to solicit payments.

53.     For example, KEVIN TAYLOR, the defendant, asked Individual-2 to make a payment toward the SSD holiday party by making it to a for-profit security company (the "Security Company"), which (although never disclosed by TAYLOR to Individual-1 or Individual-2) was owned by TAYLOR's family member. Further to this request, on or about January 5, 2024, TAYLOR sent Individual-2 a text message providing the name of the Security Company and a website address for the Security Company. Three days later, on or about January 8, 2024,

17

TAYLOR sent a text message to Individual-2 asking Individual-1 and Individual-2 to "take care of that tomorrow." Individual-2 deflected, stating that Individual-2 would talk further to Individual-1 about TAYLOR's request. The next day, TAYLOR sent another text message to Individual-2 consisting entirely of three question marks ("???"). Individual-2 did not immediately respond.

54.     Without KEVIN TAYLOR, the defendant, having collected any additional money that he owed the Event Space, on or about January 17, 2024, TAYLOR again solicited a payment from Individual-2 in exchange for TAYLOR's facilitation of the Company-2 contract. That day, TAYLOR sent a series of messages to Individual-2 asking about the status of the vest sizings. Upon learning from Individual-2 that Company-2 expected to complete its sizings by the end of the week, TAYLOR expressed excitement and sent Individual-2 an emoji of two dancing men: 🕺 🕺 . TAYLOR then almost immediately transitioned to asking about the status of his request for payment from Company-2. TAYLOR wrote: "Did [Individual-1] get back" and "let's cut that check let's get this action pending." TAYLOR also asked Individual-2 to "see if we can meet up tomorrow with [Individual-1]." Over the next five days, through on or about January 22, 2024, TAYLOR sent messages to Individual-2 with eyeball emojis (👀 👀 👀), and two separate messages to Individual-1, each consisting solely of two question marks ("??").

55.     As noted above, approximately two weeks later, on or about February 2, 2024, KEVIN TAYLOR, the defendant, was removed from his position as Commanding Officer of the SSD.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Conspiracy to Commit Honest Services Wire Fraud)

The Grand Jury charges:

56.    The allegations contained in paragraphs 1 through 9, and 13 through 29, of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

57.    From at least in or about July 2023 through in or about February 2024, in the Southern District of New York and elsewhere, KEVIN TAYLOR and GENO ROEFARO, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

58.    It was a part and object of the conspiracy that KEVIN TAYLOR and GENO ROEFARO, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public and the NYPD of their intangible right to the honest services of TAYLOR, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, TAYLOR solicited and accepted things of value, such as cash payments, airfare, hotel lodging, dining, and entertainment, from ROEFARO, in exchange for TAYLOR's agreement and promise to use, and/or the actual use of, TAYLOR's official authority and influence to attempt to cause, through advice and pressure, the NYPD to procure goods and services from ROEFARO's company, Company-1, and TAYLOR

19

and ROEFARO transmitted and caused to be transmitted electronic communications to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Honest Services Wire Fraud)

The Grand Jury further charges:

59.     The allegations contained in paragraphs 1 through 9, and 13 through 29, of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

60.     From at least in or about July 2023 through in or about February 2024, in the Southern District of New York and elsewhere, KEVIN TAYLOR and GENO ROEFARO, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and to deprive the public and the NYPD of their intangible right to the honest services of TAYLOR, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, TAYLOR solicited and accepted things of value, such as cash payments, airfare, hotel lodging, dining, and entertainment, from ROEFARO, in exchange for TAYLOR's agreement and promise to use, and/or the actual use of, TAYLOR's official authority and influence to attempt to cause, through advice and pressure, the NYPD to procure goods and services from ROEFARO's company, Company-1, and TAYLOR and ROEFARO transmitted and caused to be transmitted electronic communications to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343, 1346, and 2).

## COUNT THREE
**(Bribery Conspiracy)**

The Grand Jury further charges:

61.    The allegations contained in paragraphs 1 through 9, and 13 through 29, of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

62.    From at least in or about July 2023 through in or about February 2024, in the Southern District of New York and elsewhere, KEVIN TAYLOR and GENO ROEFARO, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, solicitation and receipt of a bribe by an agent of an organization receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(1)(B), and giving and offering a bribe to an agent of an organization receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(2).

63.    It was a part and object of the conspiracy that KEVIN TAYLOR, the defendant, being an agent of a local government, and an agency thereof, to wit, the NYPD, which received, in each of the calendar years 2023 and 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, would and did corruptly solicit and demand for the benefit of a person, and accept and agree to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the NYPD involving a thing of value of $5,000 and more, to wit, TAYLOR agreed to and did solicit and accept things of value, such as cash payments, airfare, luxury hotel lodging, fine dining, and entertainment, from GENO ROEFARO, the defendant, in exchange for TAYLOR advising and pressuring the NYPD to

21

procure goods and services from ROEFARO's company, Company-1, in violation of Title 18, United States Code, Section 666(a)(1)(B).

64.    It was further a part and an object of the conspiracy that GENO ROEFARO, the defendant, would and did corruptly give, offer, and agree to give a thing of value to a person, with intent to influence and reward an agent of a local government, and an agency thereof, to wit, the NYPD, which received, in each of the calendar years 2023 and 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, in connection business, a transaction, and a series of transactions of the NYPD involving a thing of value of $5,000 and more, to wit, ROEFARO agreed to and did give, offer, and agree to give things of value, such as cash payments, airfare, luxury hotel lodging, fine dining, and entertainment, to KEVIN TAYLOR, the defendant, in exchange for TAYLOR's agreement to advise and pressure the NYPD to procure goods and services from ROEFARO's company, Company-1, in violation of Title 18, United States Code, Section 666(a)(2).

Overt Acts

65.    In furtherance of the conspiracy and to effect the illegal object thereof, KEVIN TAYLOR and GENO ROEFARO, the defendants, committed and caused to be committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about August 22, 2023, ROEFARO withdrew from a bank in the Bronx approximately $20,000, and then met with TAYLOR in Yonkers, New York, where ROEFARO made, and TAYLOR accepted, a cash payment.

b.    On or about August 25, 2023, TAYLOR formally requested, in a memorandum directed to the NYPD Deputy Commissioner for Community Affairs, additional

NYPD funding of approximately $11 million for the procurement of goods and services from Company-1.

      c.      On or about August 31, 2023, ROEFARO withdrew from a bank in Manhattan approximately $25,000, and then met with TAYLOR in Yonkers, New York, where ROEFARO made, and TAYLOR accepted, a cash payment.

      d.      On or about October 25, 2023, TAYLOR testified before, and advised, the City Council of New York to procure goods and services from Company-1.

      e.      From on or about November 27, 2023, through on or about November 29, 2023, ROEFARO withdrew from a bank in Manhattan approximately $35,000 in cash. ROEFARO then gave, and TAYLOR accepted, a cash payment.

      f.      On or about December 7, 2023, ROEFARO withdrew from a bank in Manhattan approximately $4,200, and then met with TAYLOR in Manhattan, where ROEFARO made, and TAYLOR accepted, a cash payment.

      g.      On or about December 17, 2023, ROEFARO, who was in Hawaii, communicated to TAYLOR, who was in the Southern District of New York, that ROEFARO "got nothing from you brother and I'm already in for hundreds."

      h.      On or about December 19, 2023, TAYLOR requested, in a memorandum directed to the NYPD Police Commissioner, that the NYPD procure a "tip line" from Company-1.

      i.      From on or about January 1, 2024, through on or about January 21, 2024, ROEFARO purchased for TAYLOR tickets to multiple Broadways shows.

(Title 18, United States Code, Section 371.)

## COUNT FOUR
### (Bribery)

The Grand Jury further charges:

66.     The allegations contained in paragraphs 1 through 9, and 13 through 29, of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

67.     From at least in or about July 2023 through in or about February 2024, in the Southern District of New York and elsewhere, KEVIN TAYLOR, the defendant, being an agent of a local government, and an agency thereof, to wit, the NYPD, which received, in each of the calendar years 2023 and 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the NYPD involving a thing of value of $5,000 and more, to wit, TAYLOR agreed to and did solicit and accept things of value, such as cash payments, airfare, luxury hotel lodging, fine dining, and entertainment, from GENO ROEFARO, the defendant, in exchange for TAYLOR advising and pressuring the NYPD to procure goods and services from ROEFARO's company, Company-1.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT FIVE
### (Bribery)

The Grand Jury further charges:

68.     The allegations contained in paragraphs 1 through 9, and 13 through 29, of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

24

69.     From at least in or about June 2023 through in or about February 2024, in the

Southern District of New York and elsewhere, GENO ROEFARO, the defendant, corruptly gave,

offered, and agreed to give a thing of value to a person, with intent to influence and reward an

agent of a local government, and an agency thereof, to wit, the NYPD, which received, in each of

the calendar years 2023 and 2024, benefits in excess of $10,000 under a federal program involving

a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, in

connection with business, a transaction, and a series of transactions of the NYPD involving a thing

of value of $5,000 and more, to wit, ROEFARO did give, offer, and agree to give things of value,

such as cash payments, airfare, luxury hotel lodging, fine dining, and entertainment, to KEVIN

TAYLOR, the defendant, in exchange for TAYLOR's agreement to advise and pressure the NYPD

to procure goods and services from ROEFARO's company, Company-1.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

## COUNT SIX
### (Extortion Under Color of Official Right)

The Grand Jury further charges:

70.     The allegations contained in paragraphs 1 through 9, and 13 through 29, of this

Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

71.     From at least in or about July 2023 through at least in or about February 2024, in

the Southern District of New York and elsewhere, KEVIN TAYLOR, the defendant, knowingly

committed and attempted to commit extortion, as that term is defined in Title 18, United States

Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the

movement of articles and commodities in commerce, as that term is defined in Title 18, United

States Code, Section 1951(b)(3), to wit, TAYLOR, under color of official right, obtained from

25

GENO ROEFARO, the defendant, cash payments, airfare, luxury hotel lodging, fine dining, and entertainment, with ROEFARO's consent, that was not due to TAYLOR or his office.

(Title 18, United States Code, Section 1951.)

**COUNT SEVEN**
**(Bribery)**

The Grand Jury further charges:

72.    The allegations contained in paragraphs 1 through 7, 10 through 12, and 30 through 55 of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein

73.    From at least in or about June 2023 through in or about February 2024, in the Southern District of New York and elsewhere, KEVIN TAYLOR, the defendant, being an agent of a local government, and an agency thereof, to wit, the NYPD, which received, in each of the calendar years 2023 and 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the NYPD involving a thing of value of $5,000 and more, to wit, TAYLOR solicited tens of thousands of dollars from Individual-1 and Individual-2 in exchange for TAYLOR's promise to use and/or the actual use of his power and influence to facilitate, and otherwise not to disrupt, Company-2's contracting with the City of New York.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

26

## COUNT EIGHT
### (Extortion by Threat and under Color of Official Right)

The Grand Jury further charges:

74.     The allegations contained in paragraphs 1 through 7, 10 through 12, and 30 through 55 of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

75.     From at least in or about June 2023 through at least in or about February 2024, in the Southern District of New York and elsewhere, KEVIN TAYLOR, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TAYLOR (a) used threats of economic harm in an attempt to obtain payments from Individual-1 and Individual-2, and (b) under color of official right, attempted to obtain money from Individual-1 and Individual-2, with their consent, that was not due to TAYLOR or his office.

(Title 18, United States Code, Section 1951.)

### FORFEITURE ALLEGATIONS

76.     As a result of committing the offenses alleged in Counts One through Four of this Indictment, KEVIN TAYLOR and GENO ROEFARO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money

in United States currency representing the amount of proceeds traceable to the commission of said offenses.

77.    As a result of committing the offense alleged in Count Five of this Indictment, GENO ROEFARO, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

78.    As a result of committing the offenses alleged in Counts Six through Eight of this Indictment, KEVIN TAYLOR, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

79.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
JAY CLAYTON
United States Attorney

29